Territorial Law Library

# IN THE SUPERIOR COURT OF GUAM

BAROLOME ESTANO ABUAN, JR., )
                                         )
      Plaintiff & )
      Counterclaim Defendant, )
                                           )
      vs. )
                                           )
ESTHER ROSE BUKIKOSA ABUAN, )
                                           )
      Defendant & )
      Counterclaim Plaintiff. )
                                           )

CASE NO. DM0222-11

**FINDINGS OF FACTS AND
CONCLUSIONS OF LAW
AND ORDER**

## INTRODUCTION

This matter came before the Honorable Alberto C. Lamorena III for a Bench Trial on Bartolome Estano Abuan, Jr.'s Verified Complaint for Divorce and Esther Rose Bukikosa Abuan's Verified Counterclaim for Dissolution of Marriage. Plaintiff Bartolome Estano Abuan, JR. was present with counsel, Daniel S. Somerfleck. Defendant Esther Rose Bukikosa Abuan was also present with counsel, Joaquin C. Arriola, Jr. Having heard testimony and reviewed the evidence, the Court now issues its findings of fact and conclusions of law.

## FINDINGS OF FACT

After weighing the credibility of the witnesses and reviewing the Exhibits, this Court finds the following by a preponderance of the evidence:

1. The parties are residents of Guam and have resided on Guam for more than 90 days.

2. Plaintiff and Defendant married on Guam on August 4, 1990.

3. Plaintiff and Defendant separated on December 8, 2009.

4. The parties have two minor children of the marriage, B.J.A. (DOB 5/17/2001) and S.C.A. (DOB 9/13/2002).

5. Plaintiff moved out of the marital residence in December 2009 and began permanently living with his current "girlfriend," with whom Plaintiff has a child.

6. Defendant began cohabiting with her "boyfriend" in December of 2009 and currently occupies the marital residence.

7. Defendant works at First Hawaiian Bank where she earns approximately $2,250 per month.

8. Plaintiff currently works for Guam Power Authority and Air Force Reserves, earning approximately $4,500.00 per month.

9. Since the separation, both parties have made various payments and contributions towards community debts.

10. Following the separation, Defendant received tax refunds for tax years 2009 and 2010 and applied the funds towards community debts. Defendant also sold a Ford van belonging to the community at fair market price and applied the funds to pay down community debts.

11. Plaintiff continues to make mortgage payments on the marital residence.

## Community Debts[1]

1. Mortgage at First Hawaiian Bank: at date of separation, the mortgage balance was $140,812.00. As of the time of trial, the balance was $127,912.

2. Pentagon Federal Credit Union Visa card: $5,000

---

[1] "As a general rule, a spouse who, after separation of the parties, uses his or her separate funds to pay preexisting community obligations should be reimbursed upon divorce." Babauta v. Babauta, 2011 Guam 15 ¶ (citations omitted). The evidence here showed that both parties contributed to the community debts using separate funds following the separation, but the exact contribution by each is not in evidence. As such, this Court finds that the parties' distinct contributions are sufficient and that no further offset or reimbursement is necessary for either.

3. FHB Mastercard: $14,615

4. Star Card: $8,351

5. Take Home Charge Card: $4,133

6. Citibank Debt: $18,604

7. Bank of Hawaii Personal Loan: $3,158

8. Total value of community debts: $181,773

**Community Property**

9. Household furnishings and property consisting of computer (not working), freezer, washer and dryer (not working), television, and other household and bedroom furniture: $1,500.

10. Construction equipment: The evidence showed that various construction and tool items were acquired during the marriage. Plaintiff's Exhibit 1 lists the values the construction equipment as well as certain vehicles. Some of the listed items—most evident, the vehicles—are apparently no longer in either the Plaintiff's or Defendant's possession.

Notwithstanding the fact that this list appears to give purchase prices rather than values current at the time of separation, as this is the only evidence regarding these community property items this Court accepts the items and their values, except for the vehicles, which this Court addresses separately. This court finds that the value of the construction equipment and tools is $20,598.

11. Pentagon Federal Credit Union Savings Account: $9.00;

12. American Amicable Life Insurance Policy: $1,334 (as of May 15, 2009)

13. Defendant's 401 K Retirement Benefits: $43,311

14. Plaintiff's Government of Guam Retirement Benefits: $4,837

15. Thrift Savings Plan: $5,939

16. Government of Guam Employees Federal Credit Union Savings Account: $116

17. Vehicles:[2]

    a. 2001 Toyota Tacoma Pickup truck: $6,500

    b. 1994 Toyota Xtra Cab Pickup Truck (Damaged): $2,000[3]

18. Total value of the community assets: $86,144

## Separate Property

19. Marital Residence: The evidence showed that Plaintiff executed a Deed of Gift conveying to Defendant an equal interest in the Marital Residence (Lot No. 16-4, Tract 292, Yigo, Guam) as a joint tenant with the right of

---

[2] Although Defendant also lists a "2008 Highlander" as a community asset in her Counterclaim, the evidence revealed that Plaintiff merely cosigned for the loan that enabled the parties' adult daughter to purchase the vehicle. Defendant did not provide evidence, such as a title in either parties' name, showing that either Defendant or Plaintiff owned the vehicle or that the vehicle constitutes an asset that this court should consider as part of the marital estate. For the purposes of this property distribution, the Court considers the 2008 Highlander to be the property of the daughter as opposed to community property.

Moreover, even if this Court were to consider the vehicle as community property, Defendant failed to meet her burden of providing evidence of the value of the vehicle—loan papers document a loan balance is not an accurate indicator of the true value of a vehicle.

Finally, while a spouse's co-signature on a loan generally creates a presumption of community *liability*, Rainier Nat. Bank, Bellevue Midlakes Branch v. Clausing, 34 Wash. App. 441, 445, 661 P.2d 1015, 1018 (1983), in this case the evidence showed that the vehicle loan represents only a contingent liability, and this Court will not include the loan amount in its community debt calculations. See, e.g., McManus v. McManus, 638 So. 2d 1051, 1053 (Fla. Dist. Ct. App. 1994) (Reversing trial court's termination of order for permanent alimony to be paid by husband based in part upon finding that a debt of $300,000 listed by husband represented merely a contingent liability as cosigner on his daughters' mortgages and thus carried no debt service in the absence of default.); R.M. v. D.B.M., CN02-06578, 2002 WL 32101218 (Del. Fam. Ct. Dec. 20, 2002) (unpublished decision) (finding that debt for daughter's car, for which the parties had cosigned, constituted daughter's liability and should not be included as the liability in the marital estate).

[3] The testimony suggested that following the separation, the vehicle was given to another and is no longer in either parties' possession. However, it is unclear whether title to the vehicle remains with the parties. Regardless of who currently possesses the vehicle, because the vehicle constitutes property acquired during the marriage this Court appropriately considers the truck, or its equivalent value, as part of the community estate for purposes of division.

-4-

survivorship. Under title 16, section 6101(a)(8) of the Guam Code, property owned in joint tenancy constitutes separate property of both spouses. Moreover, "the fact that title to property is taken by spouses as joint tenants raises an inference of a gift of the funds used to acquire the property." Babauta v. Babauta, 2011 Guam 15 ¶ 25 (citations omitted). Plaintiff did not overcome the presumption that he gifted a one-half interest in the property to Defendant. The weight of the evidence established that the parties intended to hold the property as joint tenants with right of survivorship and that each party shares a one-half interest in the home that constitutes the parties' separate property. Neither party presented evidence of the fair market value of the home as of the date of separation and this Court cannot assign a value to the real property, though this Court finds that a valuation is not crucial to its findings and conclusions.

**Separate Debts**

20. Plaintiff has a separate debt owed to Bank of Hawaii incurred after the parties separated in the amount of $31,454.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over this dissolution proceeding pursuant to title 7, section 3105 and title 19, section 8201 of the Guam Code.

**Grounds for Divorce:**

2. Adultery is defined under Guam law as "the voluntary sexual intercourse of a married person with a person other than the offender's husband or wife." 19 GCA § 8204. A court may not grant dissolution of marriage on the basis of adultery unless the person seeking dissolution files within two years following discovery of the adultery. 19 GCA § 8314(a).

3. The evidence showed that Plaintiff lived with his current girlfriend in December of 2009 and has a child with this woman. The evidence supports a

finding that Plaintiff committed adultery within two years of Defendant's filing of her counterclaim for dissolution. As such, the Court will grant Defendant's request for dissolution on the basis of adultery.

## Division of Property and Debt:

4. The Supreme Court of Guam has held that "the community property to be divided upon dissolution of marriage is the residue which remains after the discharge of the community obligations. Babauta v. Babauta, 2011 Guam 15 ¶ 36 (citations omitted). The Court has further recognized that "[a]ny disproportionate distribution due to a finding of adultery or extreme cruelty shall only be made on the community property remaining after all community debts have either been satisfied or otherwise accounted for in the valuation of the net community property." Id.

5. Title 19 GCA § 6104(a) provides:

**§ 6104. Priorities for Satisfaction of Community Debts.**

> (a) Community debts shall be satisfied first from all community property and all property in which the spouses own an undivided equal interest as joint tenants or tenants in common, excluding the residence of the spouses. Should such property be insufficient, community debts shall then be satisfied from the residence of the spouses. Should such property be insufficient, only the separate property of the spouse who contracted or incurred the debt shall be liable for its satisfaction. If both spouses contracted or incurred the debt, the separate property of both spouses is jointly and severally liable for its satisfaction.

6. Title 19, section 8411(a) provides as follows:

**§ 8411. Disposition of Property.**

> In case of the dissolution of marriage by the decree of a court of competent jurisdiction, the community property, and the homestead, shall be assigned as follows:

-6-

(a) If the decree be rendered on the ground of adultery or extreme cruelty, the community property shall be assigned to respective parties in such proportions as the court, from all the facts in the case, and the condition of the parties, may deem just.

7. In this case, the community debts exceed the community property, excluding the residence. Therefore, the residence, which is held in joint tenancy, must be sold and all proceeds be applied to pay the community debts.

8. Any debt not satisfied by the proceeds from the sale of the home will be satisfied by the remaining community property as outlined in the Court's Orders below. This Court deems such division to be just given the facts and circumstances presented.

## Family and Spousal Support

9. The Court must "provide for the medical care, support, reasonable education and maintenance of the children of the marriage . . . [and] make such suitable allowance to the other spouse for that person's support, during that person's life or for a shorter period, as the Court may deem just, having regard to the circumstances of the parties respectively." 19 GCA § 8405.

10. In this case, the Court notes that the parties were married for over 19 years. Plaintiff earns approximately $4,500.00 per month in contrast to Defendant's monthly earnings of about $2,500.00. Considering the length of marriage, Defendant's and Plaintiff's monthly expenses, and each parties' ability to work contrasted with the current earning disparity between the parties, this Court finds that spousal support in the amount of $400 for the next five years paid by Plaintiff to Defendant is appropriate.

11. Additionally, unless and until it is determined otherwise by the Child Support Hearing Officer, this Court finds that Plaintiff is in the best position

-7-

to provide health and dental insurance for the minor children and that Plaintiff will provide such insurance until the children reach the age of majority.

12. Child support and child support arrears are reserved for hearing and determination by the Child Support Hearing Officer.

## Child Custody

13. The Court applies the best interest of the child standard in determining custody with respect to the parties' minor children. 19 GCA § 8404(a). The Court also acknowledges the strong public policy of allowing children to spend relatively equal time with each parent. 19 GCA § 8404(h). In this case, the best interests of the children are served by joint legal and physical custody whereby the children will spend every other week with Plaintiff. Possession of the

## ORDER

Based on the foregoing, IT IS ORDERED THAT:

(1) Plaintiff's request for Dissolution is GRANTED on the basis of irreconcilable differences and adultery.

(2) Plaintiff be restored to her maiden name, ESTHER ROSE LEON GUERRERO BUKIKOSA, at her option;

(3) Defendant is awarded continued possession and quiet enjoyment of the Marital Residence, Lot No. 16-14, Tract 292, Yigo Guam until that property is sold. The parties shall exercise good faith efforts to sell the

home and will do so within one year of the date of these findings and conclusions.

(4) Proceeds from the sale of the home shall be applied to satisfy all outstanding community debts;

(5) Until the community debts are satisfied, Defendant shall be responsible for payment of the First Hawaiian Bank Mastercard, the Pentagon Federal Credit Union Visa, and the Star Card. Plaintiff is responsible for payment of the remaining community debts.

(6) Any proceeds remaining from the sale of the residence after satisfaction of community debts shall be divided equally between Defendant and Plaintiff;

(7) Should the proceeds from the sale of the home not suffice to pay all outstanding community debts, the remaining community property described herein shall be sold and applied to the debt in the following order: construction equipment and tools; 1994 Toyota 4x4; 2001 Toyota Tacoma Pickup Truck; household items; savings accounts; retirement accounts.

(8) Upon satisfaction of the community debts, Defendant is awarded the following: her 401(k) Retirement Benefits Plan; all household items; the 2001 Toyota Tacoma Pickup; and the Thrift Savings Plan.

(9) Upon satisfaction of the community debts, Plaintiff is awarded the 1994 Toyota Xtra Cab pickup, or, if the parties no longer own title to the vehicle, the cash equivalent to be paid by Defendant to Plaintiff; the American Amicable Life Insurance Policy; construction equipment and tools; Plaintiff's Government of Guam Retirement Benefits; and the Pentagon Federal Credit Union and Government of Guam Employees' Federal Credit Union Savings accounts.

(10)   Plaintiff and Defendant are entitled to their remaining separate property;

(11)   The parties' will each assume their separate debts;

(12)   Plaintiff shall pay Defendant $400 per month as spousal maintenance for five years.

(13)   Plaintiff and Defendant shall share joint legal and joint physical custody of the parties' minor children: the children shall spend one week in each of the parties' care and custody. Accommodations shall be made by the parties to allow the children to share Thanksgiving, Christmas, and Easter with the parties' families.

(14)   Child support and child support arrears are reserved for hearing and determination by the Child Support Hearing Officer.

(15)   Each party shall bear his and her respective costs and attorneys' fees.

(16)   Defendant's counsel shall prepare the interlocutory and final decrees of divorce consistent with this Order and the above findings and conclusions and submit such decrees, with Plaintiff's counsel's approval as to form, no later than 30 days from the date of this Order.

**SO ORDERED** this 5th day of July, 2012.

JUL 0 5 2012

_____

HONORABLE ALBERTO C. LAMORENA, III
Presiding Judge, Superior Court of Guam

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam.

JUL 0 5 2012

Domingo M. Nego
Deputy Clerk, Superior Court of Guam



-10-